```
                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

BRUNO GRAFF              )    1:03CV1939
                         )
          Petitioner     )    JUDGE LESLEY WELLS
                         )    (Magistrate Judge Kenneth S. McHargh)
          v.             )
                         )
MARGARET BRADSHAW,       )
     Warden              )
                         )
          Respondent     )    REPORT AND RECOMMENDED
                         )    DECISION OF MAGISTRATE JUDGE
```

McHARGH, MAG. J.

The petitioner Bruno Graff ("Graff") has filed a petition pro se for a writ of habeas corpus regarding his 1998 conviction for murder in the Cuyahoga County, Ohio, Court of Common Pleas. The named respondent is Margaret Bradshaw ("Bradshaw"), Warden of Mansfield Correctional Institution. The petition is based on eight grounds, specifically:

> 1. The trial court's jury instructions were plainly erroneous and prejudiced the Petitioner in violation of the Due Process Clause of the Fourteenth Amendment, and counsel was ineffective under the Sixth Amendment for failing to object to such fundamentally flawed instructions.
>
> 2. The verdict is against the weight of the evidence because the evidence is insufficient to convict Petitioner of murder.
>
> 3. The trial court's jury instructions were plainly erroneous and prejudiced Petitioner in violation of the Due Process Clause of the Fourteenth Amendment.
>
> 4. The trial court's failure to investigate Juror #2's close relationship to the decedent clearly prejudiced Petitioner's constitutional right to a fair and impartial trial in violation of the Sixth and Fourteenth Amendments.
>
> 5. Trial counsel erred when he failed to move for dismissal of Juror #2 or to move for a mistrial or new

> trial and failure to advocate Petitioner's Sixth Amendment right to effective assistance of counsel.
>
> 6. Petitioner was deprived of his right to effective assistance of appellate counsel on his first direct appeal in violation of his Sixth and Fourteenth Amendments right.
>
> 7. Petitioner received constitutionally ineffective assistance of counsel on his first direct appeal as guaranteed by the Six Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution by his failure to raise meritorious claims as instructed by Petitioner.
>
> 8. Petitioner was deprived of effective assistance of counsel by the Ohio Public Defender's Office failure to offer counsel for Petitioner to file his motion for reopening pursuant to App.R. 26(B).

(Doc. 1, §§ 12A-12H.) Respondent has filed a motion to dismiss, on the basis that the petition is time-barred. (Doc. 14.) The petitioner has filed a response in opposition. (Doc. 25.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

> On March 25, 1998, defendant was indicted for purposely causing the death of his neighbor, Jonell Ficzeri, six months earlier on September 4, 1997. On September 4, 1997, defendant called 911 from the victim's home and reported that she was unconscious. He told the responding EMS and fire department personnel that she had taken a drug overdose. The victim was resuscitated and transported to Metro General Hospital where she was determined to be brain dead. Her remaining organs died approximately one and one-half days later when she was removed from life support systems.
>
> During the course of an autopsy, the Coroner's office discovered that the victim had a bruise on the top of her head. An examination of her brain tissue revealed a brain stem injury and brain swelling. The Coroner ruled that her death was caused by a blunt impact to her head with resulting brain injuries. The force of the blow to her head injured her brain stem and caused her heart and breathing to stop.

2

Cleveland police investigated the matter at the request of the Coroner's office. Defendant ultimately provided four different versions of the events to the police. He first stated that the victim called him from her house, complained of not feeling well, and hung up quickly. He stated he went to her house, found her unconscious, and called 911. Defendant was interviewed a second time after the police had obtained telephone records and the autopsy results. Defendant kept to his original story until he was told the victim called him twice that day. Then he denied striking her with his cane.

Defendant's third story was that the victim came to his house to buy pain pills, Tylenol 4 with codeine. He stated she bought two pills and returned home to get more money. She then called him a second time and that is when he went to her house, found her unconscious, and called 911. When confronted with the long delay before the 911 call, defendant provided a fourth version of events.

This time he stated that when the victim came to his house to buy the pain pills, she went into his bathroom. An unknown Puerto Rican male came over and started talking with defendant. Approximately twenty minutes later, defendant checked on the victim and found her unconscious. The Puerto Rican male freaked out and left. Defendant then carried the victim to her house and called 911.

The prosecution presented sixteen witnesses at trial to prove that defendant murdered the victim. Dr. Heather Raaf of the Coroner's office testified about the autopsy she performed on the victim. She stated that the immediate effect of the blow to the middle top of the victim's head was to send a shock waive through her brain, damage her brain and brain stem, cause her heart and breathing to stop, and render her unconscious.

Although the object that made the blunt force injury to her head did not leave a "signature," the two and one-half by two and one-quarter-inch bruise was consistent with a blow caused by defendant's cane or crutches, which were admitted into evidence. Raaf stated the injury was not consistent with an accident because of its location on the top of her skull and the size of the shock and damage to the victim's brain. Accidental injuries from bumping one's head typically occur near or below the "hatband" of the head and do not involve as much force as occurred in this case.

The EMS and firefighter who responded to the 911 call testified that the victim did not sustain the head injury during transportation to the hospital. The victim's boyfriend, brother, sister, and daughter stated

> that she did not mention any injury to her head, although they spoke with her earlier that day and she frequently complained about medical conditions. On the day of the incident, defendant twice told the victim's brother not to mention defendant's name as having been involved in the situation.
>
> Three neighbors also testified. Nina Andreychuck testified that, while sitting in her yard, she saw defendant carry the victim's unconscious body to the victim's house. She did not see any Puerto Rican male. Another neighbor later saw defendant walk back to defendant's house just as the firefighter who responded to his 911 call was looking to talk to him. The neighbor who shared the duplex with defendant stated that he went out of his way to talk to her, although he avoided talking to her on other occasions, to tell her the story that the victim overdosed.
>
> Defendant's landlord stated the defendant lived alone in his residence. An Ameritech records custodian testified concerning the telephone calls made from the victim's telephone on the day of her death. Detective Jack Bornfeld testified concerning his investigation of the murder and the four different stories defendant told him.
>
> Defendant did not testify himself, but presented medical opinion testimony from Dr. Mark Cohen. Dr. Cohen testified that it would be very unusual for a blow to the top of the head to cause brain stem injury. He did not believe the blow in this case caused the victim's death.
>
> The prosecution presented rebuttal testimony by deputy coroner Dr. Marta Steinberg. Her testimony was consistent with Dr. Raaf's. She stated that Dr. Cohen viewed the brain tissue slides for only thirteen minutes.
>
> Following closing arguments, the trial court instructed the jury, which returned a verdict finding defendant guilty of murder.

(Doc. 17, exh. 10; State v. Graff, No. 74860, 2000 WL 968791, at *1-*2 (Ohio Ct. App. July 13, 2000)). Graff was subsequently sentenced to a term of imprisonment of fifteen years to life. (Doc. 17, exh. 2.)

4

Graff, through his appellate counsel, raised three assignments of error on his direct appeal:

> 1. The trial court's jury instructions were plainly erroneous and prejudiced the appellant in violation of the Due Process Clause of the Fourteenth Amendment and counsel was ineffective under the Sixth Amendment for failing to abject [*sic* ] to such fundamentally flawed instructions.
>
> 2. The evidence is insufficient to convict the appellant of murder.
>
> 3. The verdict is against the weight of the evidence.

(Doc. 17, exh. 3.) In addition, Graff pro se raised three supplemental assignments of error:

> 1. The trial court's jury instructions were plainly erroneous and prejudiced the appellant in violation of the Due Process Clause of the Fourteenth Amendment.
>
> 2. The trial court's failure to investigate juror # 2's close relationship to the decedent clearly prejudiced appellant's constitutional right to a fair and impartial trial in violation of the Sixth and Fourteenth amendment due process [*sic*].
>
> 3. Trial counsel erred when he failed to move for dismissal of juror # 2 or move for a mistrial or new trial by juror # 2's participation in the trial and failure to advocate appellant's defense violated appellant's Sixth Amendment right to effective assistance of counsel.

(Doc. 17, exh. 7.) On July 13, 2000, the Ohio Court of Appeals affirmed Graff's conviction. (Doc. 17, exh. 10; State v. Graff, No. 74860, 2000 WL 968791 (Ohio Ct. App. July 13, 2000).)

Graff next appealed to the Ohio Supreme Court and raised the following propositions of law:

> 1. The trial court's jury instructions were plainly erroneous and prejudiced the appellant in violation of the due process clause of the Fourteenth Amendment and counsel was ineffective under the Sixth Amendment for failing to object to such fundamentally flawed instructions.

5

> 2. The verdict is against the weight of the evidence because the evidence is insufficient to convict appellant of murder.
>
> 3. The trial court's jury instructions were plainly erroneous and prejudiced the appellant in violation of the due process clause of the Fourteenth Amendment.
>
> 4. The trial court's failure to investigate Juror # 2's close relationship to the decedent clearly prejudiced appellant's constitutional right to a fair and impartial trial in violation of the Sixth and Fourteenth Amendment.
>
> 5. Trial counsel erred when he failed to move for dismissal of Juror # 2 or to move for a mistrial or new trial and failure to advocate appellant's defense violated appellant's Sixth Amendment right to effective assistance of counsel.
>
> 6. Appellant was deprived of his right to effective assistance of appellate counsel on his first direct appeal in violation of his Sixth and Fourteenth Amendment rights.

(Doc. 17, exh. 13.) On November 22, 2000, the Ohio Supreme Court denied Graff's leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 17, exh. 15; State v. Graff, 90 Ohio St.3d 1468, 738 N.E.2d 380 (2000)).

On Sept. 18, 2000, the petitioner moved, under Ohio App.R. 26(B), to re-open his original appeal on the grounds that appellate counsel was ineffective. (Doc. 17, exh. 16.) The court of appeals denied his application for re-opening on May 8, 2001, on the basis of res judicata, because the court found that petitioner's arguments "could have been made in his pro se brief in the direct appeal on in the appeal to the Supreme Court of Ohio." Nonetheless, the court considered his arguments on the merits, and found that he had failed to demonstrate that there was a genuine issue as to whether he had been deprived of the effective assistance of appellate counsel. (Doc. 17, exh. 18;

6

State v. Graff, No. 74860, 2001 WL 534152 (Ohio Ct. App. May 8, 2001.))

Graff again appealed to the Ohio Supreme Court, raising the following propositions of law:

> 1. Appellant received constitutionally ineffective assistance of counsel on his first direct appeal as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution by his failure to raise meritorious claims as instructed by appellant.
>
> 2. Appellant was deprived of assistance of counsel by the Ohio Public Defender's office's failure to offer counsel for appellant to file a motion for reopening pursuant to App.R. 26(B).

(Doc. 17, exh. 19.) On Sept. 26, 2001, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. 17, exh. 21; State v. Graff, 93 Ohio St.3d 1427, 755 N.E.2d 351 (2001).)

On July 16, 2001, Graff filed a motion for a delayed appeal, which the court of appeals dismissed sua sponte. (Doc. 17, exh. 22-23.)

The petitioner had filed an earlier petition for a writ of habeas corpus with this district court, on November 26, 2001. (Doc. 17, exh. 29-30.) However, on June 17, 2002, Graff filed a motion to dismiss the petition without prejudice, in the belief that he had not fully exhausted his claims in the state courts (doc. 17, exh. 31), which was granted on Sept. 3, 2002. (Doc. 17, exh. 32-33; Graff v. Bagley, No. 1:01cv2667 (N.D. Ohio Sept. 3, 2002) (judgment entry).)

On July 2, 2003, Graff filed a motion with the trial court for relief from judgment under Ohio Civ. R. 60(B), and a motion to vacate or set aside his conviction. (Doc. 17, exh. 24.)

7

> In this motion, he asserted that his conviction was obtained in violation of the Constitution, is void and should be vacated because: the indictment was not issued upon the complaint of a peace officer; the indictment failed to set forth the elements of the offense of murder; insufficient evidence was offered in support of his conviction; there was prosecutorial misconduct in connection with the prosecuting attorney's trial conduct; and his attorney's trial conduct deprived him of effective assistance of counsel.

State v. Graff, No. 83307, 2004 WL 584393, at *1 (Ohio Mar. 25, 2004). The trial court denied his motion, and Graff appealed to the Court of Appeals. (Doc. 17, exh. 25.) The appellate court ruled that his motion was in fact a petition for postconviction relief, and denied the motion as untimely. Graff, 2004 WL 584393, at *2-*3.

Graff filed this petition for a writ of habeas corpus on Sept. 15, 2003. (Doc. 1.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the

> "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

Graff has filed his petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

### III. MOTION TO DISMISS AS TIME-BARRED

Without waiving any available defenses, the respondent moves to dismiss Graff's petition as time-barred. (Doc. 14, at 12-15.)

The AEDPA requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final." Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)). The conviction

becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, the one-year period is tolled for the time during which an application for state post-conviction or other collateral review is "pending" in the state courts. Carey, 536 U.S. at 216-217 (citing 28 U.S.C. § 2244(d)(2)).

The statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. Clay v. United States, 537 U.S. 522, 528 n.3 (2003); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001) (citing cases).

The Ohio Supreme Court denied Graff's leave to appeal on November 22, 2000, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 17, exh. 15; State v. Graff, 90 Ohio St.3d 1468, 738 N.E.2d 380 (2000)). Although Graff did not file a petition for certiorari with the United States Supreme Court, he had ninety days to do so (i.e., until Feb. 21, 2001). However, while Graff's appeal to the state high court was pending, he also moved, on Sept. 18, 2000, to re-open his original appeal under Ohio App.R. 26(B) on the grounds that appellate counsel was ineffective. (Doc. 17, exh. 16.)

The Sixth Circuit has ruled that Rule 26(B) applications to re-open an appeal are part of the direct review process.[1] Bronaugh v. Ohio, 235 F.3d 280, 286 (6th Cir. 2000) (citing White v. Schotten, 201 F.3d 743, 752-753 (6th Cir.), cert. denied, 531 U.S. 940 (2000)). The court of appeals denied his application for re-opening on May 8, 2001, on the basis of res judicata. (Doc. 17, exh. 18; State v. Graff, No. 74860, 2001 WL 534152 (Ohio Ct. App. May 8, 2001.)) Graff again appealed to the Ohio Supreme Court, and on Sept. 26, 2001, that court dismissed the appeal as not involving any substantial constitutional question. (Doc. 17, exh. 21; State v. Graff, 93 Ohio St.3d 1427, 755 N.E.2d 351 (2001).) Once more, Graff did not file a petition for certiorari with the U.S. Supreme Court, but had ninety days to do so (i.e., until Dec. 26, 2001). Thus, the one-year limitations period began to run on December 26, 2001. Because Graff did not file his petition for a writ of habeas corpus until Sept. 15, 2003, it would appear that his petition was untimely.

The possible effect of three other events must be considered. First, Graff filed a motion for a delayed appeal on July 16, 2001, which the court of appeals dismissed sua sponte on Aug. 13, 2001.

---

[1] Ohio state courts, however, have consistently rejected White and held that a Rule 26(B) application is not part of a defendant's direct appeal. See, e.g., Lambert v. Warden, Ross Correctional, No. 01-3422, 2003 WL 22071466, at *4 (6th Cir. Sept. 2, 2003) (citing cases); Eads v. Morgan, 298 F.Supp.2d 698, 702-707 (N.D. Ohio 2003) (finding law unsettled and certifying question to Ohio Supreme Court). Of course, the reported decisions of the Sixth Circuit are binding authority upon this district court. Markva v. Haveman, 168 F.Supp.2d 695, 708-709 (E.D. Mich. 2001), aff'd, 317 F.3d 547 (6th Cir. 2003); Goff v. Kroger Co., 687 F.Supp. 1189, 1190 (S.D. Ohio 1988).

(Doc. 17, exh. 22-23.)  Because that occurred within the time frame of his direct review process, that is, before his state conviction had become "final," it would not the toll the statute of limitations, which had not yet begun to run.

Second, Graff had filed an earlier petition for a writ of habeas corpus in this court on November 26, 2001, which was dismissed without prejudice on Sept. 3, 2002.  (Doc. 17, exh. 29, 33; Graff v. Bagley, No. 1:01cv2667 (N.D. Ohio Sept. 3, 2002).)  A federal habeas petition does not toll the statute of limitations. Duncan v. Walker, 533 U.S. 167, 181-182 (2001); Griffin v. Rogers, 308 F.3d 647, 651 (6th Cir. 2002).  See generally Pliler v. Ford, 124 S.Ct. 2441, 2446 (2004) (no error where district court did not advise petitioner that federal claims would be time-barred, absent cause for equitable tolling, upon return to federal court if he opted to dismiss petition to return to state court to exhaust claims).

Finally, Graff filed a motion with the trial court on July 2, 2003, for relief from judgment under Ohio Civ. R. 60(B), and a motion to vacate or set aside his conviction.  (Doc. 17, exh. 24.) The trial court denied his motions, and Graff appealed to the Court of Appeals.  (Doc. 17, exh. 25.)  Graff argued that this court cannot grant the motion to dismiss because the appeal of his Rule 60(B) motion was still pending.  (Doc. 25, at 4.)  The appellate court has since ruled that his motion was in fact a petition for postconviction relief, and affirmed the denial of his motion as untimely.  State v. Graff, No. 83307, 2004 WL 584393 (Ohio Mar. 25, 2004).

12

In order to toll the one-year period under 28 U.S.C. § 2244(d)(2), there must be "a properly filed application for State post-conviction or other collateral review" which is pending in the state courts.  28 U.S.C. § 2244(d)(2).  The statute of limitations had already run by the time Graff filed his July 2, 2003, motion.  In any event, an untimely motion would not be considered "properly filed" so as to toll the running of the statute of limitations.  Israfil v. Russell, 276 F.3d 768, 771 (6th Cir. 2001), cert. denied, 535 U.S. 1088 (2002); Webster v. Moore, 199 F.3d 1256 (11th Cir. 2000) (per curiam), cert. denied, 531 U.S. 991 (2000).

## IV.  EQUITABLE TOLLING

One final fact that the court will consider is that Graff's first petition for a writ of habeas corpus was filed within the one year statute of limitations.  Although a federal habeas petition does not toll the statute of limitations under the AEDPA, some courts have applied the concept of equitable tolling where the original petition was initially timely.  Griffin, 308 F.3d at 651-652; Palmer v. Carlton, 276 F.3d 777 (6th Cir. 2002) (following Zarvela v. Artuz, 254 F.3d 374 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Generally, the petitioner bears the burden of persuading the court that he is entitled to equitable tolling. Griffin, 308 F.3d at 653.  Given the petitioner's pro se status, and the procedural circumstances of this case, the court will consider sua sponte whether equitable tolling applies in this case.

13

Where the original petition was voluntarily dismissed without prejudice to allow exhaustion of state remedies, under certain circumstances a petitioner may be allowed to return to federal court following exhaustion within a brief, reasonable time period. Griffin, 308 F.3d at 651-652 (citing Palmer, 276 F.3d at 781). The reasonable time period has been defined as "normally 30 days" after the federal dismissal, for a return to state court, and then following exhaustion, a return to the federal habeas court "within 30 days." Id. at 652 (citing Palmer, 276 F.3d at 781). If either condition is not met, the petitioner cannot benefit from equitable tolling. Palmer, 276 F.3d at 781.

Here, Graff's motion to dismiss the original habeas petition was granted, without prejudice, on Sept. 3, 2002, but he did not file his motion with the state trial court until July 2, 2003. While the denial of that motion was on appeal, Graff filed this petition for a writ of habeas corpus on Sept. 15, 2003. Graff did not proceed in a timely manner, and as such, cannot benefit from equitable tolling. See, e.g., Palmer, 276 F.3d at 781-782 (two-month delay).

## V. SUMMARY

Graff's conviction became final on December 26, 2001, the expiration of his time for seeking certiorari on his Rule 26(B) motion to re-open. 28 U.S.C. § 2244(d)(1)(A). Thus, Graff had one year from that date to file his petition seeking a federal writ of habeas corpus. Carey, 536 U.S. at 216; 28 U.S.C. § 2244(d)(1)(A). Because Graff did not file his petition for a writ of habeas corpus until Sept. 15, 2003, his petition was untimely.

In summary, Graff did not file his federal petition within the one year limitation period, thus the motion to dismiss (doc. 14) the petition should be granted.

## RECOMMENDATION

It is recommended that the motion to dismiss the petition be granted.

Dated:   Aug. 5, 2004           s/Kenneth S. McHargh
                                Kenneth S. McHargh
                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).